IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

T.R.,

     Plaintiff,

v.                                     Civ. No. 20-276 GBW/KRS

PATRICK HOWARD, *et al.*,

     Defendants,

and

TEACHERS INSURANCE COMPANY,

     Plaintiff-in-Intervention,

v.

T.R. and PATRICK HOWARD,

     Defendants-in-Intervention.


**ORDER GRANTING PLAINTIFF-IN-INTERVENTION TEACHERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

     THIS MATTER comes before the Court on Plaintiff-in-Intervention Teachers Insurance Company's Motion for Summary Judgment.  *Doc. 102.*  Having reviewed the Motion and the briefing (*docs. 126, 127, 134, 135*), and being otherwise fully advised, the Court GRANTS the Motion.

I.     BACKGROUND

In this case, Plaintiff/Defendant-in-Intervention T.R. brings claims against Defendant/Defendant-in-Intervention Patrick Howard ("Howard") for deprivations of her substantive due process and equal protection rights under the Fourteenth Amendment, battery, and intentional infliction of emotional distress based on a course of conduct in which he allegedly sexually groomed, harassed, and abused Plaintiff while she was a student at Las Cruces High School.[1]  *See doc. 94* at ¶¶ 20, 189-207, 245-255, 316-324.  During the time period relevant to Plaintiff's claims, Howard was insured by Teachers Insurance Company ("TIC") under a homeowners policy including personal liability coverage.  *See doc. 102* at ¶ 15-18; *doc. 126* at ¶¶ 9-12; *doc. 127* at ¶ 2.  On December 6, 2021, TIC filed a Complaint in Intervention for Declaratory Judgment requesting the Court to declare that TIC has no duty to defend, indemnify, or reimburse Howard for the claims brought against him in the underlying litigation by T.R.  *See doc. 75*.  TIC filed the instant Motion for Summary Judgment on April 5, 2022, requesting summary judgment on its Complaint in Intervention.  *See doc. 102*.

---

[1] Plaintiff also brings claims for violation of Title IX of the Education Amendments of 1972, First Amendment retaliation, violation of Plaintiff's rights under the Equal Protection Clause, *Monell* liability, negligent operation of a building, and intentional infliction of emotional distress against Defendant Las Cruces Public Schools.  *See generally doc. 94*; *doc. 140* (dismissing Plaintiff's claims against Gregory Ewing); *doc. 191* (dismissing Plaintiff's claims against Dana Critchlow).  Plaintiff's claims against Defendant Las Cruces Public Schools are not relevant to Teachers Insurance Company's Complaint in Intervention, *see generally doc. 75*, or the instant Motion, *see generally doc. 102*.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The court's role is not to weigh the evidence or determine credibility, but rather merely to assess whether a genuine issue exists as to material facts requiring a trial.  *See Anderson*, 477 U.S. at 249, 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id.* at 257.  Furthermore, the court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 551-54 (1999).  However, "viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative."  *Hall v.*

*Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991) (internal quotations omitted); *see also Anaya v. CBS Broad. Inc.,* 626 F. Supp. 2d 1158, 1197 (D.N.M. 2009) ("The mere existence of a scintilla of evidence will not avoid summary judgment.").  As with any fact asserted by a party in a summary judgment motion, the nonmovant must point the Court to such support by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  Further, all material facts set forth in the motion and response which are not specifically controverted are deemed undisputed.  D.N.M.LR-Civ. 56.1(b).

## III.   UNDISPUTED MATERIAL FACTS (UMFs)

Based on the record before it, the Court finds the facts below material and without a genuine dispute.  The Court has not included the parties' undisputed material facts pertinent to their arguments concerning the TIC policy's sexual molestation, business activities, criminal acts, and punitive damages exclusions, because those facts are not essential to its resolution of the instant motion.

In addition, for purposes of an action for declaratory judgment challenging the existence of an insurer's duty to defend, the material facts are constituted by what is alleged in the relevant pleading and the language of the policy at issue.  Therefore, for certain of the following UMFs, the Court has cited to the Amended Complaint directly rather than to the parties' statements of undisputed material facts in their briefing.  In so doing, the Court bears in mind that Plaintiff's allegations remain unproven at this stage of the litigation.

1. The term "Underlying Lawsuit" refers to Plaintiff T.R.'s First Amended Complaint for Damages for Violations of Civil Rights and State Torts (*doc. 94*), filed on January 28, 2022, in the case entitled *T.R. v. Howard, et al.*, Case No. 2:20-cv-00276-GBW-KRS, in the United States District Court for the District of New Mexico.  *Doc. 102* at 2; *doc. 126* at 2; *doc. 127* at 2.

2. In the Underlying Lawsuit, Plaintiff brings claims against Defendant Howard for violation of Plaintiff's Substantive Due Process rights under the Fourteenth Amendment, battery, violation of Plaintiff's rights under the Equal Protection Clause under the Fourteenth Amendment, and intentional infliction of emotional distress.  *Doc. 102* at 2-3; *doc. 126* at 2; *doc. 127* at 2.

3. In the Underlying Lawsuit, Plaintiff alleges the following background allegations concerning sexual grooming:

   30. Sexual grooming is a method used by offenders that involves building trust with a child and the adults around the child to gain access to and alone time with the child.

   31. Offenders can be teachers, caregivers, or other trusted individuals that have authority over the child and have access to the child.

   32. Offenders exploit their position of trust to groom the child, the child's parents, and the child's community.

   33. Offenders intentionally build their reputation, so as to cast doubt if an allegation is made against them.

   34. An individual who is grooming a child typically enters a "testing" stage wherein they seek opportunities to brush against a child's breast, hair, or buttocks, in a way that is ambiguous enough that if the student reports the behavior, the offender can claim that the conduct was inadvertent.

35. Sexual grooming is sexual abuse.

*Doc. 94* at ¶¶ 30-35.

4.  In the Underlying Lawsuit, Plaintiff alleges that Defendant Howard was a high
    school teacher employed at Las Cruces High School at all relevant times.
    Specifically, during the 2016-2018 school years, he was one of Plaintiff's teachers
    and her faculty advisor for Future Farmers of America.  *Doc. 102* at 3; *doc. 126* at
    2; *doc. 127* at 2.

5.  In the Underlying Lawsuit, Plaintiff alleges that Defendant Howard subjected her
    to "common sexual grooming behaviors" when she was a 15- to 16-year-old
    student at Las Cruces High School, including but not limited to: "grooming [her]
    family and environment prior to moving into the next stage of sexual grooming
    which was testing her physical boundaries"; taking "methodical steps to build a
    relationship with [Plaintiff] and gain her trust"; referring to her as his "favorite
    student"; spending unsupervised time alone with her, sometimes in his
    classroom; sending her private text messages; having her sit close to his desk in
    his classroom; and having her sit next to him when he drove school vehicles on
    school-sponsored field trips.  *See doc. 94* at ¶¶ 86-91.

6.  In the Underlying Lawsuit, Plaintiff alleges that "Defendant Howard sat his
    favorite female students near his desk[] and next to him in school vehicles on

school-sponsored trips so he could be near them and touch them." *Doc. 94* at ¶ 56.

7. In the Underlying Lawsuit, Plaintiff also alleges that Defendant Howard "escalated his testing and pushing of physical contact on T.R." in February 2017 by "placing his hand on T.R.'s upper thigh, near her crotch as she slept" on a school-sponsored trip.  Allegedly, "Defendant Howard kept his hand on T.R.'s upper thigh until another female student noticed his hand, and he pulled it away."  Defendant Howard allegedly repeated the same conduct on another school-sponsored trip in March 2017, and also placed his hand on T.R.'s thigh while she was sleeping on at least three other occasions during the Spring 2017 and Fall 2017 semesters.  *See doc. 94* at ¶¶ 92-94.

8. In the Underlying Lawsuit, Plaintiff alleges that Defendant Howard also subjected certain other female students to sexual grooming and sexual abuse during the 2016-2017 and 2017-2018 school years, including C.H., another minor female student at Las Cruces High School.  With respect to C.H., specifically, Plaintiff alleges that Defendant Howard engaged in common grooming behaviors with her when she was 15 years old during the 2017-2018 school year. Defendant Howard allegedly "engaged in common grooming behaviors with C.H." and "took methodical steps to build a relationship with [her] and gain her

trust," such as by exploiting his relationship with C.H.'s father, whom Howard had known from college, to gain C.H.'s trust.  *See doc. 94* at ¶¶ 48, 51, 173-76.

9.  In the Underlying Lawsuit, Plaintiff alleges "[i]n December of 2017, Defendant Howard grabbed C.H. on the back of her upper thigh, under her buttocks, in his classroom."  The Amended Complaint also alleges other instances of sexual misconduct involving C.H. that are not directly relevant here.  *Doc. 94* at ¶ 180; *see also doc. 94* at ¶¶ 178-79, 185.

10.  In the Underlying Lawsuit, T.R. alleges she became withdrawn, experienced needless pain, and suffered bodily injury, anguish and suffering, and extreme and severe emotional distress, as a result of the actions complained of in her Complaint.  *Doc. 102* at 4; *doc. 126* at 3; *doc. 127* at 3.

11.  In the Underlying Litigation, Plaintiff alleges Defendant Howard's actions were intentional.  *Doc. 94* at ¶¶ 207, 253, 316, 321-22.[2]

12.  Plaintiff-in-Intervention TIC issued a homeowner's insurance policy (policy number 001258192) to Defendant Howard, with an effective period spanning from June 10, 2016, to June 10, 2022.  *Doc. 102* at 4; *doc. 126* at 3; *doc. 127* at 3.

---

[2] For the reasons explained in *infra* Section IV.B.ii, the evidence cited by T.R. and Howard in support of their argument that this fact is disputed does not create a genuine dispute.  *See* Fed. R. Civ. P. 56(c)(1)(B).

13. The TIC policy is renewed annually, and because the 2016-2017 and 2017-2018 policies are the only policies relevant to the claims raised in the Underlying Litigation and do not differ from each other in any manner material to the Court's resolution of the instant Motion to Dismiss, *see doc. 102* at 5; *doc. 126* at 3; *doc. 127* at 3-4; *doc. 134* at 4; *doc. 135* at 4, for purposes of this Order the term "the TIC Policy" refers to the TIC policy as it was in effect in the 2016-2017 and 2017-2018 policy years.

14. Defendant Howard is a named insured under the TIC policy. *Doc. 102* at 4; *doc. 126* at 3; *doc. 127* at 3.

15. Coverage L of the TIC Policy provides personal liability coverage for an insured according to the following terms:

We pay, up to our limit, all sums for which an Insured is liable by law because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage. We may make investigations and settle claims or suits that we decide are appropriate. We do not have to provide a defense after we have paid an amount equal to our limit as a result of a judgment or written settlement.

*Doc. 127-1* at 17; *doc. 127-2* at 17.

16. Under the TIC Policy, "[b]odily injury means bodily harm to a person and includes sickness, disease or death. This also includes required care and loss of services." *Doc. 127-1* at 6; *doc. 127-2* at 6.

17.  Pursuant to an exclusion applicable to Coverage L, the TIC Policy "does not

apply to bodily injury or property damage which results directly or indirectly

from . . . an intentional act of an Insured or an act done at the direction of an

Insured.  This includes any loss which is expected or intended by an Insured."

*Doc. 127-1* at 20-21; *doc. 127-2* at 20-21.

18. In a deposition conducted on January 14, 2022, Defendant Howard stated that he

didn't know the reason why he placed his hand on T.R.'s thigh while she was

sleeping during the February, 2017, field trip, because it was "[j]ust an impulse."

He also stated that it was "[j]ust an impulse" to place his hand on T.R.'s thigh

each of the five times he did so while she was sleeping on school-sponsored field

trips.  Later in his deposition, regarding the time that he touched C.H.'s upper

thigh in his classroom, he stated that he "[did not] think that there was a thought

process of intending to do it.  It was just a reaction as she walked by."[3]  *See doc.*

*126-3* at 37:18-23, 40:9-13, 55:16-20; *doc. 134* at 6.

---

[3] In relevant part, Defendant Howard's deposition testimony reads as follows:
   Q: Why did you put your hand on [T.R.'s] thigh while she was sleeping?
    . . .
   A: I don't know. Just an impulse.
   . . .
   Q: What kind of impulse?
   A:  Just someone sitting beside me.  I just stuck my hand over.
   . . .
   Q: Did you intend to touch [C.H.] on her thigh or on her butt?
   A:  I don't think that there was a thought process of intending to do it.  It was just a reaction
   as she walked by.
*Doc. 126-3* at 37:18-23, 40:9-13, 55:16-20.

**IV.   ANALYSIS**

TIC seeks a declaration that it has no contractual obligation under the TIC Policy

to defend or indemnify Howard.  *Doc. 75* at 1.  TIC argues that the TIC Policy contains

four coverage exclusions that each constitute a separate and independent basis for such

a declaration: (1) an exclusion for bodily injury arising from sexual molestation; (2) an

exclusion for bodily injury resulting from an insured's intentional act(s); (3) a criminal

acts exclusion; and (4) a business activities exclusion.  *See doc. 102* at 10-15.  TIC also

seeks a declaration that the policy's punitive damages exclusion is enforceable as to any

punitive damages that may be awarded in the underlying litigation.  *See id.* at 15.  The

Court finds that TIC is entitled to a declaration on summary judgment that it has no

duty to defend Howard based on the policy's exclusionary clause for intentional or

expected acts.  Therefore, the Court does not reach TIC's arguments pertaining to the

policy's sexual molestation, criminal acts, business activities, or punitive damages

exclusions.

**A.  Construction of Insurance Contracts**

A federal court sitting in diversity must apply the substantive law of the forum

state.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  As "[t]he interpretation of an

insurance contract is governed by state law," the Court will apply New Mexico law in

interpreting the language of the insurance policy.  *See Houston Gen. Ins. Co. v. Am. Fence

Co.*, 115 F.3d 805, 806 (10th Cir. 1997).

i.   *General rules of construction*

Under New Mexico law, the Court must determine the obligations of an insurer

by reference to the terms of the insurance policy at issue.  *Knowles v. United Servs. Auto.*

*Ass'n*, 832 P.2d 394, 396 (N.M. 1992).  In so doing, the Court "begin[s] with the plain

language of the insurance agreement itself."  *Union Standard Ins. Co. v. Hobbs Rental*

*Corp.*, 566 F.3d 950, 952 (10th Cir. 2009) (citing *Rummel v. Lexington Ins. Co.*, 945 P.2d 970,

976 (N.M. 1997)).  "When a policy contains clear and unambiguous language, the duty

of the reviewing court is to enforce that language as written as an expression of the

intent of the parties."  *City of Santa Rosa v. Twin City Fire Ins. Co.*, 143 P.3d 196, 198 (N.M.

Ct. App. 2006).  When evaluating competing interpretations of a policy, the Court must

ask "what understanding a reasonably intelligent, non-lawyer lay person might glean

from the policy, in light of the usual meaning of the words and the circumstances

leading to purchase of the policy."  *Berry v. Fed. Kemper Life Assur. Co.*, 99 P.3d 1166, 1183

(N.M. Ct. App. 2004).  "Finally, while we construe insurance contract ambiguities in

favor of the insured, a favored interpretation cannot lead to strained interpretations of

the policy language."  *Hobbs*, 566 F.3d at 952 (citing *Battishill v. Farmers All. Ins. Co.*, 127

P.3d 1111, 1115 (N.M. 2006)).

ii.   *Duties to defend and indemnify*

Under New Mexico Law, an insurer's duties to defend and to indemnify are

distinct.  *Found. Rsrv. Ins. Co. v. Mullenix*, 642 P.2d 604, 605 (N.M. 1982) (citing *Am.*

*Emp.'s Ins. Co. v. Cont'l Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973)).  "The duty to defend is

broader than the duty to indemnify."  *Valley Imp. Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*,

129 F.3d 1108, 1116 (10th Cir. 1997).  An insurer has a duty to defend claims against its

insured if "the language of a complaint states a claim that falls within the terms of the

contract."  *City of Albuquerque v. BPLW Architects & Engineers, Inc.*, 213 P.3d 1146, 1151

(N.M. Ct. App. 2009).  While a duty to defend "arises out of the nature of the allegations

in the complaint . . . the 'duty to indemnify relates to liability actually imposed on the

insured for claims falling within the scope of coverage.'"  *Hartford Fire Ins. Co. v. Gandy

Dancer, LLC*, 864 F. Supp. 2d 1157, 1193-94 (D.N.M. 2012) (quoting *Mount Vernon Fire Ins.

Co. v. Okmulgee Inn Venture, LLC,* 451 F. App'x 745, 749 (10th Cir. 2011) (unpublished)).

Accordingly, "[i]f the allegations of the . . . complaint clearly fall outside the provisions

of [the insurance contract], indemnity by the insurer is not required."  *N.M. Physicians

Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737 (N.M. 1993).

       iii.  *Exclusionary clauses*

New Mexico law recognizes that "[t]he parties to an insurance contract may

validly agree to extend or limit insurance liability risks as they see fit."  *Safeco Ins. Co. of

Am. v. McKenna*, 565 P.2d 1033, 1036 (N.M. 1977).  Because insurance contracts are

contracts of adhesion, "[e]xclusionary clauses in insurance policies are to be narrowly

construed, with the reasonable expectations of the insured providing the basis" for the

analysis.  *Knowles*, 832 P.2d at 396 (quotations omitted).  "In determining the

applicability of [a policy] exclusion, the focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery."  *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994) (citations omitted).

### B.  Expected or Intentional Acts Exclusion

TIC argues that it has no duty to defend Defendant Howard in the Underlying Litigation due to the TIC Policy's exclusionary clause for intentional actions.  *See doc. 102* at 11-12.  The TIC Policy's relevant insuring clause provides that that TIC "will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage" and "pay, up to [its] limit, all sums for which an Insured is liable by law because of bodily injury or property damage caused by an occurrence to which this coverage applies."  UMF 13.  The TIC policy's intentional acts exclusion modifies coverage by providing that the policy "does not apply to bodily injury . . . which results directly or indirectly from . . . an intentional act of an Insured or an act done at the direction of an Insured," including "any loss which is expected or intended by an Insured."[4]  UMF 15.

TIC argues that all of the allegations about Howard's conduct contained in the Amended Complaint fall within the scope of the TIC Policy's intentional acts exclusion because Plaintiff's "allegations against Defendant Howard are, at their essence, claims

---

[4] The parties do not dispute whether Plaintiff alleges that she suffered "bodily injury" within the meaning of the TIC Policy.

regarding intentional acts: grooming, inappropriately touching and molesting T.R."

*Doc. 102* at 12.  T.R. and Howard respond that summary judgment is premature because

"the Court has not determined if Howard's actions were intentional or not" and

Howard claims that some of his actions described by the allegations in the Amended

Complaint were unintentional.  *See doc. 126* at 11-12; *see also doc. 127* at 10.

> i.   *Summary judgment on applicability of the intentional acts exclusion is*
> *not premature.*

The Court disagrees with nonmovants T.R. and Howard that summary judgment

on the applicability of the TIC Policy's intentional acts exclusion is premature.  Under

New Mexico law, the relevant inquiry for resolving whether an insurer has a duty to

defend is whether "the complaint . . . alleges facts potentially within the coverage of the

policy."  *State Farm Fire & Cas. Co. v. Price*, 684 P.2d 524, 528 (N.M. 1984); *Mullenix*, 642

P.2d at 605-06 (citing *Am. Emp. Ins. Co.*, 512 P.2d at 676).  In making this inquiry, the

Court need not look beyond the allegations in a complaint or the "known but

unpleaded facts."  *Capitol Specialty Ins. Corp. v. Sw. Clubs, Inc.*, Civ. No. 12-01299

MCA/LAM, 2014 WL 11515028, at *12 (D.N.M. Mar. 31, 2014) (stating that the "coverage

issue [of whether coverage is excluded by an exclusionary clause] is a *question of law* that

is decided on the basis of the pleadings and the known but unpleaded facts").

Therefore, the Court need not, and will not, make a conclusive factual finding as to

Defendant Howard's intent for purposes of determining whether TIC has a duty to

defend the underlying litigation as a matter of law.  *See id.*

> ii. *There is no genuine dispute about whether the conduct alleged in the Amended Complaint is intentional.*

Having determined that a decision on summary judgment about the existence of TIC's duty to defend in light of the policy's intentional acts exclusion is not premature, the Court finds that nonmovants fail to establish a genuine dispute concerning whether the Amended Complaint alleges conduct outside the scope of the intentional acts exclusion. *See Bernalillo Cnty. Deputy Sheriffs Ass'n v. County of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992) ("If the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required."). It is undisputed that the Amended Complaint contains *some* allegations describing intentional acts. *See doc. 126* at 3; *doc. 127* at 3. Rather, nonmovants dispute TIC's contention that the Amended Complaint <u>only</u> raises claims based on intentional acts because, they argue, some of the conduct described by the Amended Complaint does not constitute intentional conduct within the meaning of the TIC policy. *See doc. 126* at 3; *doc. 127* at 3; *see also doc. 126* at 6 (asserting that "the [TIC Policy] only excludes acts intended or expected by the insured, not acts done by the insured that are impulsive"); *doc. 127* at 5. As evidence for this assertion, nonmovants rely on Defendant Howard's statements at his deposition that he acted on an "impulse" when he placed his hand on T.R.'s thigh and touched C.H.'s upper thigh. *See doc. 126* at 12; *doc. 127* at 10; UMF 18 & *supra* n.3. For two reasons, the Court finds that Defendant Howard's deposition testimony is insufficient to create a

genuine dispute about whether the Amended Complaint could be read to allege

conduct outside the scope of the TIC Policy's intentional acts exclusion.

First—accepting as true Defendant Howard's contention that the conduct in

question was "just an impulse" and/or "just a reaction"—this description does not

remove the conduct from the category of "intentional act" within the meaning of the

policy, because to do so would be to disregard an ordinary understanding of

intentionality.  *See Berry*, 99 P.3d at 1183 (stating that "[w]hen evaluating competing

interpretations of a policy, the courts should view the language issue from the

standpoint of 'a hypothetical reasonable insured'" and "ask . . . what understanding a

reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the

usual meaning of the words and the circumstances leading to purchase of the policy")

(citations omitted); *McKenna*, 565 P.2d at 1037 ("Resort will not be made to a strained

construction [of an insurance policy] for the purpose of creating an ambiguity when no

ambiguity in fact exists.").  An "intentional act" is "[a]n act resulting from the actor's

will directed to that end.  An act is intentional when it is foreseen and desired by the

doer, and this foresight and desire resulted in the act through the operation of the will."

ACT, Black's Law Dictionary (11th ed. 2019); *see also* INTENTIONAL, Black's Law

Dictionary (11th ed. 2019) (defining "intentional" as "[d]one with the aim of carrying

out the act").  An "impulse" is "[a] sudden urge or inclination that prompts an

unplanned action."  IMPULSE, Black's Law Dictionary (11th ed. 2019);  see also *Impulse*

*Definition*, Cambridge Dictionary Online,

https://dictionary.cambridge.org/us/dictionary/english/impulse (last visited Mar. 13,

2023) (defining "impulse" as a "sudden strong wish to do something" and doing

something "on an impulse" means you acted "because you suddenly want to, although

you haven't planned to.").  Thus, while acting on an impulse suggests a sudden urge

and lack of planning, the act was still accomplished through the operation of will.  The

lack of thoughtfulness or planning certainly does not prevent the result of an impulsive

act from being expected or desired from the point of view of the actor.  In contrast,

something done "compulsively" arguably lacks the operation of will.  *Compulsive*

*Definition*, Cambridge Dictionary Online,

https://dictionary.cambridge.org/us/dictionary/english/compulsive (last visited Mar. 13,

2023) (defining "compulsive" as "doing something a lot and unable to stop doing it.");

*see also Compulsive Definition*, Macmillan Dictionary Online,

https://www.macmillandictionary.com/us/dictionary/american/compulsive (last visited

Mar. 13, 2023) (defining "compulsive" as "impossible to control and therefore

sometimes harmful.").

      These general and commonsense understandings of "impulse" and "intentional

act" are also consistent with the circumstances of this case.  Notably, the nonmovants do

not argue that the impulsive nature of Defendant Howard's touching of Plaintiff and

T.R. on certain occasions rendered the touching undesired or surprising from his point

of view.  Nor do they argue that Defendant Howard was incapable of forming intent during the times in question.  More importantly, such arguments would find no support in Defendant Howard's testimony, in which Defendant Howard only testified to his lack of planning prior to touching T.R. and C.H.  *See* UMF 18.  In short, there is no evidence in the record supportive of a reading of the Amended Complaint in which its allegations describe anything other than intentional conduct.

Nonmovants' argument fails for a second reason: Even if the Court assumed *arguendo* that Defendant Howard lacked the specific intent to touch T.R. and C.H. on certain of the instances alleged in the Amended Complaint when he acted on 'an impulse,' New Mexico law does not restrict the reach of intentional acts exclusions to actions taken with specific intent.  In *Knowles v. United Services Automobile Association*, the New Mexico Supreme Court interpreted the phrase "expected or intended" in intentional acts exclusions and discussed with approval *United Services Automobile Association v. Elitzky*, in which a Pennsylvania court considered and expressly rejected a construction of policy exclusions for intentional acts that would limit their application to acts done with specific intent.  832 P.2d at 397-98 (discussing *United Servs. Auto. Ass'n v. Elitzky,* 517 A.2d 982 (Pa. Super. Ct. 1986)).  Consistent with the *Elitzky* court's approach, the *Knowles* court adopted a construction of intentional acts exclusions that would eliminate coverage for damages arising from "harm of the same general type as intended by the insured."  *See id.* at 398.  That construction, the Court explained, "[gives]

effect to the reasonable expectations of the insured," consistent with prior New Mexico case law interpreting insurance contracts.[5]  *Id.*

Here, the allegations in the Amended Complaint unambiguously establish that the harm associated with Defendant Howard's touching of Plaintiff's thigh on school-sponsored field trips and of C.H.'s upper thigh in his classroom are harms of the same general type as those intended by Defendant Howard.  The Amended Complaint alleges that common sexual grooming behavior involves taking intentional steps to build an offender's reputation and position of trust so that the offender can later initiate physical conduct with a victim "in a way that is ambiguous enough that if the student reports the behavior, the offender can claim that the conduct was inadvertent."  UMF 3.  The Amended Complaint then alleges that Defendant Howard engaged in such "common grooming behavior" with Plaintiff and C.H. and documents specific examples of the ways in which Defendant Howard allegedly groomed Plaintiff and C.H.  *See* UMFs 5, 8.  Moreover, the Amended Complaint alleges that Defendant Howard purposely had T.R. sit next to him on school field trips so that he could touch her.  UMF 6.

---

[5] The *Knowles* court ultimately determined that the intentional acts exclusion in the personal umbrella policy before the court was unenforceable because the exclusion was "repugnant" to the policy's broad insuring clause.  832 P.2d at 398-99.  Although the parties here do not argue that the TIC Policy's intentional acts exclusion is unenforceable, the Court has nevertheless considered the issue of whether the TIC Policy's intentional acts exclusion is repugnant to its insuring clause for personal liability.  *See id.* at 398 (stating that a court's inquiry when determining whether an insurer has a duty to defend does not end with its interpretation of an exclusionary clause to cover the actions alleged in a pleading because the court "must also determine whether the exclusionary clause is repugnant to the insuring clause").  The Court concludes that the TIC Policy's intentional acts exclusion is enforceable because it does not effectively nullify coverage or reduce it substantially or unreasonably.  *See LaMure*, 860 P.2d at 740.

These allegations contextualize the incidents that nonmovants argue resulted from impulsive conduct and clearly assert that such conduct was preceded and facilitated by Defendant Howard's intentional grooming activity targeted at Plaintiff and C.H.  Because Plaintiff unambiguously alleges that the conduct at issue at least indirectly resulted from prior intentional conduct on the part of Defendant Howard, even if Defendant Howard lacked the specific intent to touch T.R.'s or C.H.'s thighs on certain occasions, that touching nevertheless "result[ed] directly or indirectly from . . . an intentional act of [Howard]" within the meaning of the TIC Policy's intentional acts exclusion.  *See* UMF 17.  Therefore, the Court finds, as a matter of law, that all of the conduct forming the basis for Plaintiff's claims against Defendant Howard—as alleged in the Amended Complaint—is within the scope of the TIC Policy's intentional acts exclusion.

## V.   CONCLUSION

Because the application of the TIC Policy's intentional acts exclusion to the allegations contained in Plaintiff's Amended Complaint cannot be genuinely disputed, TIC is entitled to a declaration on summary judgment that it has no duty to defend or indemnify Howard in the Underlying Litigation.   *See Bernalillo Cnty. Deputy Sheriffs Ass'n*, 845 P.2d at 791.

IT IS THEREFORE ORDERED that Plaintiff-in-Intervention Teachers Insurance Company's Motion for Summary Judgment (*doc. 102*) is GRANTED.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**