**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

T.R.,

     Plaintiff,

v.                                           Civ. No. 20-276 GBW/JHR

PATRICK HOWARD, *et al.*,

     Defendants.

**ORDER GRANTING DEFENDANT PATRICK HOWARD'S OPPOSED MOTION
FOR LEAVE TO FILE AN ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT, DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE
PLEADINGS AS TO DEFENDANT HOWARD, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT PATRICK HOWARD'S CROSS-MOTION FOR
JUDGMENT ON THE PLEADINGS**

THIS MATTER comes before the Court on Plaintiff's Motion for Judgment on the

Pleadings as to Defendant Patrick Howard (*doc. 143*), Defendant Patrick Howard's

Opposed Motion for Leave to File an Answer to Plaintiff's First Amended Complaint

(*doc. 146*), and Defendant Patrick Howard's Cross-Motion for Judgment on the

Pleadings (*doc. 147*).  Having reviewed the Motions and their attendant briefing (*docs.

147, 160, 161, 168, 172*), and being otherwise fully advised, the Court will GRANT

Defendant Howard's Motion for Leave to File an Answer (*doc. 146*), DENY Plaintiff's

Motion for Judgment on the Pleadings (*doc. 143*), and GRANT IN PART and DENY IN

PART Defendant Howard's Cross-Motion for Judgment on the Pleadings (*doc. 147*).

I.     BACKGROUND

A.  Factual Background

At the time of the events giving rise to this case, Plaintiff T.R. was a 15- and 16-year-old high school student at Las Cruces High School ("LCHS") in Las Cruces, New Mexico.  *See doc. 94* at ¶ 86.  Defendant Patrick Howard ("Howard") was an agriculture teacher at Las Cruces High School and a faculty advisor for LCHS's Future Farmers of America chapter of which Plaintiff was a member.  *See id.* ¶ 46.  Plaintiff alleges that Defendant Howard sexually groomed her and other underage female students and subjected them to various forms of educator sexual misconduct during the 2016-2017 and 2017-2018 school years.  *See id.* ¶¶ 48, 49; *see generally doc. 94*.

Plaintiff alleges that Defendant Howard "engaged in common sexual grooming behaviors with [her]," including by taking "methodical steps to build a relationship with [her] and gain her trust" and the trust of her family.  *Id.* ¶¶ 87-89.  She alleges he would call her "his 'favorite student,'" spend time alone with her unsupervised, find time to be alone with her in his classroom, have her sit close to his desk during class, and send her text messages about matters not related to school—sometimes privately and sometimes in group messages that included two other female students.  *Id.* ¶¶ 90-91, 103.  Plaintiff further alleges Defendant Howard kept a photo of her on his desk and would comment on her appearance by telling her she looked "good" or "beautiful";

2

that he "didn't want other guys looking at her"; that he "liked when she wore her hair in braids because it made her look younger, and he didn't want her to grow up"; and that he missed her when he had not seen her for a while. *Id.* ¶¶ 100-102, 104.

Plaintiff also alleges that Defendant Howard touched her on multiple occasions during the 2016-2017 and 2017-2018 school years at LCHS and off-campus at school-sponsored field trips. Specifically, she alleges that on at least five occasions Defendant Howard would have Plaintiff sit next to him while he drove a vehicle on a school-sponsored field trip so that when she fell asleep he could "plac[e] his hand on [Plaintiff's] upper thigh, near her crotch." *See id.* ¶¶ 91-95. Plaintiff also alleges that Defendant Howard would frequently and publicly hug her in order to feel her breasts by giving her "frontal hugs that were too long and too close, causing her breasts to press against his body," "often massage[] T.R.'s shoulders and back near her bra strap," and on at least one occasion had T.R. sit on his lap. *Id.* ¶¶ 54, 97-99, 112, 196.

Finally, Plaintiff alleges that Defendant Howard grabbed or squeezed her buttocks on more than four occasions. *See id.* ¶ 198. On one occasion, he pretended to try to help her as she was falling and took the opportunity to grab her buttocks. *Id.* ¶ 106. On another occasion, he "gave [her] a frontal hug, placed his arms on her back and slid them down to her buttocks and grabbed her buttocks." *Id.* ¶ 108. On two other occasions, he put his hand on her thigh and rubbed her leg "up her thigh towards her

crotch" prior to "reach[ing] around to touch her buttocks." *Id.* ¶ 110.  On other

occasions, Plaintiff alleges Defendant Howard patted or squeezed her buttocks directly.

*Id.* ¶ 111.  Defendant Howard was charged criminally for some of the conduct alleged in

the First Amended Complaint and pled guilty to one count of Criminal Sexual Contact

of a Minor for touching T.R.'s buttocks.  *Id.* ¶ 83.

### B.  Procedural History

Plaintiff T.R. filed her Original Complaint for Damages for Violations of Civil

Rights and State Torts ("Original Complaint") on March 27, 2020, bringing claims

against Defendant Howard for violations of her rights under the Fourteenth

Amendment to substantive due process and equal protection, as well as a tort claim

against Defendant Las Cruces Public Schools ("LCPS").  *See doc. 1.*  Following a

temporary stay of the proceedings, *see docs. 18, 30*, Defendant Howard filed a timely

answer to the Original Complaint on July 2, 2021, *see doc. 31.*  The parties engaged in

discovery and a court-mediated settlement conference and actively litigated various

pretrial matters.

On January 25, 2022, Plaintiff filed an unopposed motion for leave to file an

amended complaint, *see doc. 90*, which the Court granted, *see doc. 93.*  Plaintiff filed her

First Amended Complaint for Damages for Violations of Civil Rights and State Torts

("First Amended Complaint") on January 28, 2022, adding claims for battery and

4

intentional infliction of emotional distress against Defendant Howard.  *Doc. 94* ¶¶ 316-324.  The First Amended Complaint also added two individual Defendants and several new constitutional and tort claims against Defendant LCPS.  *See generally id*.  Pursuant to Rule 15(a), Defendant Howard's responsive pleading was due on February 11, 2022, but none was filed.  *See* Fed. R. Civ. P. 15(a)(3).  The discovery period closed on October 31, 2022.  *See doc. 142*.

On November 18, 2022, more than nine months after Defendant Howard's responsive pleading was due, Plaintiff filed her Motion for Judgment on the Pleadings as to Defendant Patrick Howard based on his failure to answer the First Amended Complaint.  *Doc. 143*.  On November 28, 2022, Defendant Howard filed a Response to Plaintiff's Motion for Judgment on the Pleadings and Cross-Motion for Judgment on the Pleadings.  *Doc. 147*.  On the same day, he also filed his Opposed Motion for Leave to File an Answer to Plaintiff's First Amended Complaint.  *Doc. 146*.  Briefing on the parties' cross motions for judgment on the pleadings and Defendant Howard's Motion for Leave to File an Answer is complete, *see docs. 166, 169, 173*, and these motions are ready for decision.

## II.   LEGAL STANDARDS

### A.  Rule 6(b)(1)(B)

Federal Rule of Civil Procedure 6(b)(1)(B) governs extensions of time when the

time for completing an act has already passed.  Fed. R. Civ. P. 6(b)(1)(B).  Courts may

allow a movant to file an untimely pleading under Rule 6(b)(1)(B) if the movant can

show excusable neglect.  *See Cato v. Hargrove*, 836 F. App'x 722, 724 (10th Cir. 2020).

"[A] finding of excusable neglect under Rule 6(b)(1)(B) requires both a demonstration of

good faith by the [movant] and also it must appear that there was a reasonable basis for

not complying within the specified period."  *Stark-Romero v. Nat'l R.R. Passenger Co.*

*(AMTRAK)*, 275 F.R.D. 544, 547 (D.N.M. 2011) (internal brackets removed) (quoting

*Anderson v. Bank of Am.* (*In re Four Seasons Sec. Laws Litig.*), 493 F.2d 1288, 1290 (10th Cir.

1974)).  Generally speaking, under Rule 6(b), "inadvertence, ignorance of the rules, and

mistakes construing the rules do not constitute excusable neglect."  *Scull v. Mgmt. &*

*Training Corp.*, No. CIV 11-0207 JB/RHS, 2012 WL 1596962, at *5 (D.N.M. May 2, 2012)

(quoting *Quigley v. Rosenthal*, 427 F.3d 1232, 1238 (10th Cir. 2005)).

Courts consider the following factors when determining whether a movant has

shown excusable neglect: (i) the danger of prejudice to the opposing party; (ii) the

length of the delay and its potential impact on the proceedings; (iii) the reason for the

delay and whether that reason was within the reasonable control of the movant; and

(iv) whether the movant acted in good faith. *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017). Among these factors, the reason for the delay is the most important. *Id.* Nevertheless, "[a] determination of whether a party's neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Beebe v. Todd*, Civ. No. 19-545 JHR/JFR, 2020 WL 3639734, at *2 (D.N.M. July 6, 2020) (quoting *United States. V. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004)).

### B. Fed. R. Civ. P. 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (stating that "[w]e use the same standard when evaluating 12(b)(6) and 12(c) motions"). For purposes of a Rule 12(c) motion, the Court assumes that the well-pleaded allegations in the complaint are true and construes them in the light most favorable to the nonmoving party. *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999). In evaluating the legal sufficiency of the complaint under Rule 12(c), "[t]he court's function . . . is not to weigh potential evidence that the parties might present at

7

trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999)).

### III.   ANALYSIS

The Court will address Defendant Howard's Motion for Leave to File an Answer and Plaintiff's Motion for Judgment on the Pleadings before turning to Defendant Howard's Cross-Motion for Judgment on the Pleadings.

### A.   Good Cause Exists for Permitting Defendant Howard to File an Answer to Plaintiff's First Amended Complaint

As discussed above, the "excusable neglect" standard is an equitable one that requires consideration of four factors, which are (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the proceedings; (iii) the reason for the delay and whether that reason was within the reasonable control of the movant; and (iv) whether the movant acted in good faith, although the most important factor is the reason for the delay and whether it was within the reasonable control of the movant. *Perez*, 847 F.3d at 1253. Having weighed the foregoing factors, the Court finds that Defendant Howard has shown excusable neglect such that an extension of time for him to file an answer to Plaintiff's First Amended Complaint is warranted. However, the Court does not find excusable neglect with respect to

Defendant Howard's failure to assert the defense of qualified immunity in his answer to the Original complaint, so the Court will not permit him to include that defense in his answer.

The Court addresses the factors out of order, beginning with the second factor. With respect to this factor—the length of the delay and its impact on the proceedings—the Court finds that the nine-month duration of Defendant Howard's delay in filing an answer to the First Amended Complaint has not negatively impacted the proceedings. Although this length of delay is facially significant, Plaintiff has not been harmed by the delay, and other courts have not found delays of comparable or greater length to preclude a finding of excusable neglect in similar circumstances. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1467-68 (10th Cir. 1987) (finding the district court did not abuse its discretion in denying a motion for default judgment when the answer was filed almost one year late, where the plaintiff had not been prejudiced by the delay, discovery was proceeding, and the plaintiff was on notice of several of the defendants' defenses); *Griffin v. Suthers*, 156 F. App'x 66, 71-72 (10th Cir. 2005) (finding that a district court did not abuse its discretion in finding excusable neglect where an answer to an amended supplemental complaint had not been filed for seven months); *Post v. Gilmore*, 91 F. App'x 513, 514 (7th Cir. 2004) (finding that the trial court did not abuse its discretion in permitting the defendants leave to file an answer approximately fourteen

9

months after it was due because the court "[found] it hard to imagine how [the plaintiff] could have been harmed when everyone assumed that the defendants continued to deny the essence of [the plaintiff's] claims and discovery and other pre-trial matters proceeded on that basis").

The third and fourth factors are the reason for the delay and whether the movant acted in good faith. With respect to the reason for the delay, which is the most important factor, *see Perez*, 847 F.3d at 1253, the Court notes that "[g]enerally, courts are more forgiving of missed deadlines caused by clerical calendaring errors, mathematical miscalculations of deadlines and mishandling of documents, but are less forgiving when deadlines are missed due to lawyering mishaps, such as where counsel misconstrues or misinterprets the rules or makes poor tactical decisions," *Scott v. Raudin McCormick, Inc.*, No. 08-4045-EFM, 2010 WL 3125955, at *2 (D. Kan. Aug. 6, 2010) (collecting cases). Contrary to Plaintiff's argument, courts in this circuit have found that a calendaring error constitutes excusable neglect, particularly when the calendaring issue is an isolated error. *See Taitt-Phillip v. Lockheed Martin Corp.*, Civ. No. 21-150 DHU/GBW, 2022 WL 1262217, at *5-6 (D.N.M. Apr. 28, 2022) (explaining that "multiple district courts in this circuit have held that simple calendaring errors may constitute excusable neglect" but "when a calendaring error arises in the context of a party's

pattern of dilatory conduct during discovery, courts are less likely to find that the error

constitutes excusable neglect").

Here, Defendant Howard explains that the reason he failed to file an answer to

the First Amended Complaint was a "clerical, calendaring error" caused by the

departures of Ann Keith, lead counsel for Defendant Howard, and her legal assistant

from their law firm shortly prior to the holiday season and when Plaintiff filed her First

Amended Complaint.  *Doc. 146* at 2.  In response, Plaintiff argues that Defendant

Howard's explanation for the calendaring error is not believable because: (1) the time

span between Ms. Keith's departure from her firm, the holiday season, and Plaintiff's

filing of her First Amended Complaint is not as compressed as Defendant Howard

represents; and (2) Defendant Howard's counsel was given notice on multiple occasions

that Plaintiff planned to file an amended complaint—most notably, when Defendant

Howard was contacted for his position on Plaintiff's motion to file her First Amended

Complaint and Defendant Howard's new lead counsel stated that he did not oppose the

motion.  *See doc. 160* at 6-7.  Despite the issues highlighted by Plaintiff, the Court is not

aware of any evidence that Defendant Howard's failure to file a timely answer was

anything more than a simple, one-time calendaring error.  The Court also does not find

any evidence of bad faith[1] or willfulness on the part of Defendant Howard; to the

---

[1] The Court disagrees with Plaintiff's argument that Defendant Howard has shown a pattern of
dilatoriness throughout his prosecution of the case because his "pleadings were minimal" and some of

contrary, once Defendant Howard became aware of the error when Plaintiff filed her

Motion for Judgment on the Pleadings, Defendant Howard acted quickly to remedy it.

Therefore, the Court finds that the final two factors weigh in favor of Defendant

Howard.  *See Downey v. Am. Nat'l Prop. & Cas. Co.*, No. 1:11-CV-00587-MCA-KBM, 2012

WL 13071548, at *3 (D.N.M. Mar. 31, 2012) (finding, where there was no suggestion that

a calendaring error occurred in bad faith, that the circumstances merited a finding of

excusable neglect); *Brown v. Univ. of Kansas*, No. 10-2606-WEB, 2011 WL 1700141, at *2-3

(D. Kan. May 4, 2011) (finding that an administrative error was due to carelessness as

opposed to bad faith and therefore fell "within the realm of" excusable neglect).

Finally, the Court considers the first factor, the danger of prejudice to the

opposing party.  Plaintiff's litigation activities thus far indicate that she has litigated

under the assumption that Defendant Howard denies the factual bases of her claims

against him and not under the assumption that he admitted the factual allegations

against him.  For instance, Plaintiff served discovery on Defendant Howard, deposed

---

his filings in this case have "piggybacked" on those of Defendant LCPS.  *See doc. 160* at 7-8.  As Defendant Howard points out, *see doc. 168* at 9, the Local Rules permit a party to adopt another party's motion or other paper by reference, D.N.M.LR-Civ. 7.1(a).  Additionally, the Court considers the substance of Defendant Howard's various filings in this matter to be significantly less probative of a pattern of dilatoriness than Defendant Howard's general history of compliance or noncompliance with Court orders and deadlines.  *See Candelaria v. Molina Healthcare, Inc.*, Civ. No. 18-725 WJ/GBW, 2019 WL 4643946, at *8 (D.N.M. Sept. 24, 2019) (collecting cases and examining how courts in various circuits take a movant's overall diligence into account under the Rule 16(b)(4) good cause standard after stating that courts do so "in the same manner" under Rule 16(b)(4) and Rule 6(b)).

witnesses identified by him, and took his deposition.  *See doc. 126-3*.  In other words,

Plaintiff has proceeded in this litigation as if Defendant Howard filed an answer

denying the factual allegations against him.  In these circumstances, courts are less

likely to find that prejudice has occurred.  *See Carrasco v. M&T Bank*, Civil Case No.:

SAG-21-532, 2021 WL 4846844, at *9 (D. Md. Oct. 18, 2021) (finding that no prejudice

was caused by a party's failure to respond to an amended complaint, given that the

party filed an answer to the initial complaint and the case had proceeded through

discovery and cross motions for summary judgment despite the absence of the answer);

*cf. Morgan v. Vogler L. Firm, P.C.*, Case No. 4:15-CV-1654 SNLJ, 2017 WL 1374740, at *2

(E.D. Mo. Apr. 17, 2017) (finding prejudice where the discovery period had closed and

the nonmovant represented that it relied upon its belief that the complaint's factual

allegations about liability had been admitted by the movant's failure to answer when

designing its discovery requests).  Although the discovery period is now closed,

Plaintiff does not argue that she would need to pursue any additional discovery if

Defendant Howard is permitted to file his answer to the First Amended Complaint.

Moreover, although the First Amended Complaint added two tort claims against

Defendant Howard and several new factual allegations, the newly added claims against

Defendant Howard are based on the same conduct that was at issue in the Original

Complaint.  *Compare doc. 1* at ¶¶ 16-28, 30-33, 37 *with doc. 94* at ¶¶ 84-120.

The Court notes, however, that Defendant Howard seeks to raise the defense of qualified immunity for the first time in his proposed answer to the First Amended Complaint. *Compare doc. 31* at 10-12 *with doc. 146* at 11-61.  Defendant Howard offers no explanation for why he did not include a qualified immunity defense in his answer to the Original Complaint even though the Original Complaint brought substantive due process and equal protection claims against him under the Fourteenth Amendment. *See doc. 1* at ¶¶ 40-51.  Nor does he explain why he is seeking to assert qualified immunity for the first time at this stage of the proceedings, given that the First Amended Complaint added no new constitutional claims against him. *See generally doc. 94*. Additionally, as the dispositive motions deadline has passed, *see doc. 142*, any dispositive motion filed by Defendant Howard on the basis of qualified immunity at this stage of the proceedings would be untimely.  Therefore, the Court does not find that Defendant Howard has shown excusable neglect for failing to include a qualified immunity defense in his answer to the Original Complaint.

However, the Court does not find that the inclusion of a qualified immunity defense in Defendant Howard's proposed answer to the First Amended Complaint constitutes grounds for entirely denying him leave to file a second answer.  The Court notes Defendant Howard's suggestion that the Court could allow him to file an answer without the affirmative defense of qualified immunity, or strike that defense from his

14

proposed answer, in order to "moot" Plaintiff's argument that she would be prejudiced by his new assertion of the defense.  *See doc. 168* at 4.  In order to remove the prejudice that would be caused to Plaintiff by Defendant Howard's introduction of a qualified immunity defense for the first time at this stage of the proceedings, the Court will grant Defendant Howard leave to file his proposed answer to the First Amended Complaint, which he has attached to his Motion for Leave to File an Answer, *see doc. 146* at 11-61, only if he strikes the portion of his proposed answer that asserts a qualified immunity defense, *see id.* at 59.

In summary, the Court finds that the foregoing circumstances, in addition to the Court's preference to decide claims on their merits rather than on pleading technicalities, *see Foman v. Davis*, 371 U.S. 178, 181 (1962), warrant finding that Defendant Howard has shown excusable neglect for his failure to file a timely answer to Plaintiff's First Amended Complaint, except for the portion of his answer which seeks to newly assert a defense of qualified immunity.  The Court therefore will permit Defendant Howard to file an answer to Plaintiff's First Amended Complaint that excludes the affirmative defense of qualified immunity.

> ### B.  Plaintiff's Motion for Judgment on the Pleadings as to Defendant Patrick Howard (*Doc. 143*)

Plaintiff's Motion for Judgment on the Pleadings requests the Court to enter judgment for Plaintiff on all four of her claims against Defendant Howard and "an

order prohibiting Defendant Howard from raising any defenses under Rule 12(b)(2)-(7) and any affirmative defenses as required by Rule 8(c)" based on Defendant Howard's failure to file an answer to the First Amended Complaint. *Doc. 143* at 1, 7. As set forth above, the Court finds that Defendant Howard should be permitted to file an answer that does not include the affirmative defense of qualified immunity. With the exception of a qualified immunity defense, the proposed answer that Defendant Howard has attached to his Opposed Motion for Leave to File an Answer to Plaintiff's First Amended Complaint, *see doc. 146* at 11-61, contains identical affirmative defenses to those in his answer to the Original Complaint, *compare doc. 31* at 10-12 *with doc. 146* at 59-61. Therefore, because the Court is granting Defendant Howard leave to file an answer to the First Amended Complaint, the Court will deny Plaintiff's Motion for Judgment on the Pleadings (*doc. 143*) as moot.

## C.  Defendant Howard's Cross-Motion for Judgment on the Pleadings (*Doc. 147*)

Defendant Howard moves for judgment in his favor on three of Plaintiff's four claims against him, namely, her substantive due process claim and tort claims for battery and intentional infliction of emotional distress. *Doc. 147* at 11.

### i.  Substantive Due Process

Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. Of Sacramento v. Lewis*, 523

16

U.S. 833, 840 (1998). "The Supreme Court has found substantive due process violations where government action has infringed a 'fundamental' right without a 'compelling' government purpose, as well as where government action deprives a person of life, liberty, or property in a manner so arbitrary it 'shocks the conscience.'" *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019) (internal citations omitted). In the Tenth Circuit, courts apply the fundamental-rights approach when the plaintiff challenges legislative action and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action. *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018).

Plaintiff alleges that both the fundamental-rights and the shocks-the-conscience approach to substantive due process violations are relevant to her claim, *see doc. 94* at ¶ 189, but the Court finds that Plaintiff's substantive due process claim against Defendant Howard is properly analyzed under the shocks-the-conscience approach rather than the fundamental-rights approach. As alleged in the First Amended Complaint, the basis for Plaintiff's substantive due process claim is Defendant Howard's "use[] [of] his position of authority as a teacher and . . . advisor to sexually abuse Plaintiff" by "repeatedly and continuously touch[ing] intimate and/or erogenous areas of Plaintiff T.R.'s body during the 2016-2018 school years." *Id.* at ¶¶ 194-95. Consequently, Plaintiff has alleged that the nature of the interference with her right to bodily integrity was executive action, *see*

*id.* at ¶¶ 189-207, and the Court will evaluate her claim under the 'shocks the conscience' standard.

The standard for a 'shocks the conscience' substantive due process claim is whether a challenged government action shocks the conscience of federal judges. *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013).  The challenged conduct must be "conscience shocking[] in a constitutional sense," *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011) (quoting *Lewis*, 523 U.S. at 847), which means the conduct must far exceed mere negligence, *Halley*, 902 F.3d at 1155.  Conduct shocks the conscience when it is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency."  *See Lewis*, 523 U.S. at 847 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)).  Therefore, to prevail on a substantive due process claim, a plaintiff must "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)).  "Conduct intended to injure in some way unjustifiable by any government interest," meaning arbitrary government action that is "unrestrained by the established principles of private right and distributive justice," "is the sort of official action that rises to the conscience-shocking level."  *Lewis*, 523 U.S. at 845, 849 (quotations omitted).

18

In *Abeyta By & Through Martinez v. Chama Valley Independent School District, No. 19*, the Tenth Circuit Court of Appeals affirmed the broad proposition that "[s]exual assault or molestation by a school teacher violates a student's substantive due process rights," 77 F.3d 1253, 1255 (10th Cir. 1996).  Other circuits have likewise held that sexual abuse of a schoolchild at the hands of a school employee violates the Due Process Clause.  *See, e.g., Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989) (stating that a teacher's sexual molestation of a student violates a student's right to bodily integrity under the Due Process Clause); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994) (stating that a public schoolteacher's physical sexual abuse of a student infringes the student's rights under the Fourteenth Amendment); *P.H. v. Sch. Dist. Of Kansas City, Missouri*, 265 F.3d 653, 658 (8th Cir. 2001) (stating that "[i]t is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse"); *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. Of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996) (stating that students' "right to be free from sexual abuse at the hands of a public school teacher is clearly protected by the Due Process Clause of the Fourteenth Amendment").

However, the *Abeyta* court did not clearly define the type of conduct that constitutes 'sexual assault or molestation,' and courts in this and other circuits have subsequently held that not all teacher/student touching that is sexual in nature is

unconstitutional.  *See N.F. on behalf of M.F. v. Albuquerque Pub. Sch.*, Case No. 14-cv-699

SCY/RHS, 2015 WL 13667294, at *3 (D.N.M. Jan. 30, 2015) (discussing *Abeyta* and

concluding that the *Abeyta* decision is not best read to affirm that all unwelcome sexual

contact between a teacher and student is actionable); *see also S.M. v. Bloomfield Sch. Dist.*,

Case No. 16-cv-823 SCY/WPL, 2017 WL 3159166, at *7 (D.N.M. June 12, 2017) (collecting

cases in which sexually motivated touching of a student by a school employee was not

found to be unconstitutional).  Courts instead undertake a "highly fact specific" inquiry

to determine whether alleged improper sexual touching of a student by a teacher is

sufficiently offensive and egregious to be deemed conscience shocking. *See Garrity v.*

*Governance Bd. Of Cariños Charter Sch.*, Civ. No. 19-95 JAP/JHR, 2020 WL 5074385, at *3

(D.N.M. Aug. 27, 2020).

This fact-specific inquiry is guided by "general principles" that bear on whether

conduct meets the high threshold of offensiveness and egregiousness required for a

substantive due process violation.  *See id.*  First, "a teacher's sexually motivated,

unwelcome physical contact with a student is not necessarily conscience shocking."  *Id.*

(quoting *N.F. on behalf of M.F.*, 2015 WL 13667294, at *4).  Second, "inappropriate

touching of a student is much more likely to be actionable under the due process clause

if it involves the touching of certain erogenous zones, such as the genitals, the breasts,

or the buttocks."  *Id.*  Third, "teacher abuse is more likely to be considered brutal,

inhumane, and conscience shocking if it happens more than once or repeatedly occurs over a long period of time." *Id.*

The Court finds that Plaintiff has sufficiently alleged a substantive due process claim.  To reiterate, the conduct alleged by Plaintiff here includes: sexual grooming, *doc. 94* at ¶ 20; five instances of Defendant Howard touching Plaintiff on her upper thigh while she was asleep, *id.* ¶¶ 92-94; "frequent" long, close frontal hugs in which Defendant Howard could feel Plaintiff's breasts, *id.* ¶ 96-98; Plaintiff sitting in Defendant Howard's lap on at least one occasion, *id.* ¶ 99; two instances of Defendant Howard rubbing Plaintiff's inner thigh toward her crotch, *id.* at ¶ 110; more than four occasions on which Defendant Howard touched, grabbed, or squeezed Plaintiff's buttocks, *id.* ¶¶ 105-106, 108-110; and back and shoulder massages "often" given by Defendant Howard to Plaintiff,  *id.* ¶ 112.  Although Plaintiff does not allege that Defendant Howard touched her genitals, a circumstance that courts may weigh heavily in their 'shocks the conscience' analysis, *see N.F. on behalf of M.F.*, 2015 WL 13667294, at *4, she alleges that Defendant touched, grabbed, or squeezed her buttocks — a body part considered intimately private for purposes of the 'shocks the conscience' standard, on more than four separate occasions, *see Sh.A as Next Friend of J.A. v. Tucumcari Mun. Sch.*, No. CV 00-727 JP/DJS-ACE, 2001 WL 37124734, at *4 (D.N.M. Oct. 17, 2001); *doc. 94* at ¶¶ 108-111.  Although certain examples of the conduct alleged by Plaintiff might not

independently support a substantive due process claim, the Court considers the totality of the alleged physical and non-physical misconduct—including Plaintiff's allegation that Defendant Howard sexually groomed her while she was his student—and concludes that Plaintiff's allegations plausibly cross the line between conduct that is "harassing" but not constitutionally actionable and conduct that is an unconstitutional "intrusion of [a] student's bodily integrity." *See Abeyta*, 77 F.3d at 1255; *N.F. on behalf of M.F.*, 2015 WL 13667294, at *4 (finding that the plaintiff's allegations of nonphysical and physical harassment were, in the aggregate, sufficiently conscience shocking for the plaintiff's substantive due process claim to survive a motion to dismiss).

The Court's conclusion that Plaintiff has alleged conduct that plausibly shocks the conscience is bolstered by her allegation that Defendant Howard pled guilty to one count of Criminal Sexual Contact of a Minor for one of the instances in which he touched Plaintiff's buttocks. *See doc. 94* at ¶ 83. Criminal sexual contact of a minor is defined as "the unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful and intentional causing of a minor to touch one's intimate parts." N.M. Stat. Ann. § 30-9-13. For purposes of the statute, "intimate parts" are defined as "the primary genital area, groin, buttocks, anus or breast." *Id.* At least one court in this district has found that a defendant's guilty plea to criminal sexual contact of a minor prevents any reasonable factfinder from concluding that the

defendant's conduct did not amount to sexual molestation or assault for the purposes of the 'shocks the conscience' inquiry.  *S.M.*, 2017 WL 3159166, at *7.  Additionally, at least one sister district court in this circuit has held that when a defendant's challenged sexual misconduct has led to criminal charges, the existence of those charges shows that the defendant's actions rose to the level of a sexual assault for purposes of the substantive due process analysis.  *Doe as Next Friend of P.D. v. Indep. Sch. Dist. No. 3 of Okmulgee Cnty.*, Case No. CV-21-305-JAR, 2023 WL 149974, at *3 (E.D. Okla. Jan. 10, 2023).

The Court is unpersuaded by Defendant Howard's argument that Plaintiff's claim fails as a matter of law because she does not allege Defendant Howard touched her genitals, buttocks, or breasts under her clothing.  *See doc. 147* at 7.  Although the distinction between touching that occurs over clothing and under clothing surely figures in the 'shocks the conscience' analysis, some fact patterns involving touching over the clothing result in courts finding a substantive due process violation while others do not.  As a result, the Court does not find support in the cases cited by Defendant Howard or in other relevant case law for the proposition that a substantive due process claim fails as a matter of law where the touching occurred over clothing.

For instance, in *Sh.A as Next Friend of J.A. v. Tucumcari Municipal Schools*, the plaintiffs were two fifth and sixth grade boys who alleged a teacher had rubbed and

touched their backs and chests—sometimes under their shirts—and had touched them

on their thighs underneath their shorts above their knees.  *See* 2001 WL 37124734, at *1.

The court found that this conduct did not give rise to a substantive due process claim,

even though it involved touching underneath clothing and occurred for several weeks

or months, because it "[was] not overtly sexual."  *Id.* at *4.  In so finding, the court relied

upon the fact that the touching did not involve the victims' buttocks, nipples, or

genitals, the defendant's actions were "not done secretively but rather in the open

classroom with other students present," the defendant "did not threaten the children or

warn them not to tell anyone," and the defendant "said nothing and displayed no facial

expression to indicate that his actions were done for his own sexual gratification."  *Id.*

In other words, the *Sh.A* court focused predominantly on the location of the touching

(i.e., whether it involved erogenous zones or not) and whether it was overtly sexual,

and not on whether there was skin-to-skin contact.

In *N.F. on behalf of M.F. v. Albuquerque Public Schools*, another case cited by

Defendant Howard, a student's sixth grade English teacher and special education

sponsor stared at her buttocks; asked her to sit in a chair known as the "cuddle chair";

slapped her buttocks, stomach, and upper thighs; and intentionally touched her genitals

over her clothing.  *See* 2015 WL 13667294, at *5.  In evaluating whether this conduct

supported a substantive due process claim, the *N.F.* court acknowledged that

allegations that the defendant had on one occasion slapped the plaintiff's buttocks, stomach, and upper thighs over clothing were less "overtly sexual" than the skin-on-skin contact in *Tucumcari*. *Id.* at *4. However, the Court ultimately held that the plaintiff's substantive due process claim survived a motion to dismiss notwithstanding the fact that all of the alleged touching occurred over clothing, since the misconduct had culminated in the touching of the plaintiff's genitals. *See id.* at *4-5.

To summarize, for purposes of a motion for judgment on the pleadings, the Court declines to apply bright line rule prohibiting a plaintiff from bringing a substantive due process claim based on unwanted sexual touching from a teacher if the touching was not of the plaintiff's genitals, buttocks, or breasts and under the plaintiff's clothing. Here, Plaintiff's allegations that Defendant Howard sexually groomed her; touched her on her upper thigh while she was asleep five times; frequently gave her long, close frontal hugs in order to feel her breasts; had her sit in his lap; rubbed her inner thigh toward her crotch twice; touched, grabbed, or squeezed her buttocks more than three times; and "often" massaged her shoulders and back—coupled with non-physical misconduct and his guilty plea to criminal sexual contact of a minor—plausibly could shock the conscience. The Court will therefore deny Defendant Howard's Cross-Motion as to Plaintiff' substantive due process claim.

*ii. Battery and Intentional Infliction of Emotional Distress*

It is undisputed that Defendant Howard is a public employee within the meaning of the New Mexico Tort Claims Act ("NMTCA"). *See doc. 94* at ¶ 19. As such, he is immune from liability for any tort committed within the scope of his public duties, except as immunity is expressly waived in the NMTCA. *See* N.M. Stat. Ann. §§ 41-4-2(A) (providing that, unless excepted, a public employee acting within the scope of duty is granted immunity from liability for any tort), 41-4-4(A), 41-4-17(A). Here, Defendant Howard argues that he is entitled to immunity from Plaintiff's tort claims because the NMTCA does not waive liability for intentional infliction of emotional distress claims or battery claims that are not brought against law enforcement officers. *See doc. 147* at 10. In response, Plaintiff does not make any arguments about the applicability of the NMTCA waiver provisions but instead argues that Defendant Howard has waived any immunity defense by failing to file a timely answer to the First Amended Complaint. *See doc. 161* at 9-10.

As explained above, the Court is permitting Defendant Howard to file his proposed answer to Plaintiff's First Amended Complaint out of time but is prohibiting him from including the defense of qualified immunity. *See supra* Section A. The Court does not find that Defendant Howard has waived the defense of the absence of a waiver of immunity under the NMTCA for Plaintiff's state law claims, because he included this

defense in his original answer and also includes it in his proposed answer to Plaintiff's First Amended Complaint. *See doc. 31* at 11; *doc. 146* at 59. Consequently, the Court turns to the merits of Defendant Howard's sovereign immunity defense pursuant to the NMTCA. Although Plaintiff's First Amended Complaint states that Plaintiff's tort claims against Defendant Howard are brought pursuant to waivers under the New Mexico Tort Claims Act, *see doc. 94* at 1-2, it does not specify which waivers, specifically, would permit Plaintiff's causes of action. Plaintiff's response to Defendant Howard's Cross-Motion for Judgment on the Pleadings also fails to cite to a specific waiver provision and appears to have abandon the argument that there is an applicable NMTCA waiver. *See doc. 161* at 9-10.

Without a citation from Plaintiff to a specific immunity waiver provision and having found none in its independent review of the statute, the Court concludes that none of the NMTCA's express immunity waivers permit Plaintiff to bring her Battery and IIED claims against Defendant Howard. *See* N.M. Stat. Ann. §§ 41-4-5 through 41-4-12. "The NMTCA waives immunity for intentional torts . . . only when they are committed by law enforcement officers acting within the scope of their duties," *Garcia v. Martinez*, 414 F. Supp. 3d 1348, 1357 (D.N.M. 2019), and there is no allegation that Defendant Howard was a law enforcement officer at the time in question. In addition, the NMTCA contains no waiver for IIED claims. *Cordova v. Cnty. of Bernalillo*, Civil No.

03-1372 WJ/WDS, 2004 WL 7338317, at *2-3 (D.N.M. Jan. 28, 2004). The Court therefore concludes that Defendant Howard is entitled to judgment as a matter of law on Plaintiff's tort claims against him based on his immunity to those claims under the NMTCA.

**IV.  CONCLUSION**

For the foregoing reasons, it is ORDERED as follows:

(i)  Defendant Patrick Howard's Opposed Motion for Leave to File an Answer to Plaintiff's First Amended Complaint (*doc. 146*) is **GRANTED.** Defendant Howard shall **STRIKE** the affirmative defense of qualified immunity from his proposed Answer to Plaintiff T.R.'s First Amended Complaint for Damages for Violations of Civil Rights and State Torts (*see doc. 146* at 11-61) and file his Answer **within five (5) days of the date of this Order.**

(ii)  Plaintiff's Motion for Judgment on the Pleadings as to Defendant Patrick Howard (*doc. 143*) is **DENIED**.

(iii)  Defendant Patrick Howard's Cross-Motion for Judgment on the Pleadings (*doc. 147*) is **GRANTED IN PART** as to Plaintiff's battery and intentional infliction of emotional distress claims and **DENIED IN PART** as to Plaintiff's substantive due process claim. Plaintiff's equal protection claim against Defendant Howard remains.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**