IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

T.R.,

    Plaintiff,

v.                                                                          Civ. No. 20-276 GBW/JHR

PATRICK HOWARD,

    Defendant.

**<u>ORDER ON PLAINTIFF'S PUNITIVE DAMAGES BRIEF</u>**

THIS MATTER comes before the Court on Plaintiff's Brief in Support of the Admission of Evidence of Harm to Non-Parties in Support of Her Punitive Damages Claim, the Admission of Defendant Howard's Assertion of the Fifth Amendment in Support of Her Punitive Damages Claim, and to Prohibit Argument that Defendant Howard's Criminal Sentence or Alleged "Good Acts" as a Deacon or Educator Should Mitigate a Punitive Damages Award. *Doc. 305*. Having reviewed the Brief as well as Defendant's response, *see doc. 315*, having heard argument from the parties regarding the Brief during a hearing on March 1, 2024, and being apprised of the relevant law, the Court makes the following rulings.

    **A. Evidence of Defendant Howard's Harm to Non-Parties**

In support of her claim for punitive damages, Plaintiff moves to admit evidence of Defendant Howard's harm to non-parties. *Doc. 305* at 3-5. Plaintiff also requests a jury instruction which informs the jury that they may consider evidence of Defendant

Howard's harm to others to determine Defendant's liability and "to determine the nature and enormity of Defendant Howard's wrongful conduct toward Plaintiff T.R. to decide punitive damages." *Id.* at 3.

In *BMW of North America, Inc. v. Gore*, the Supreme Court provided several guideposts for determining the reasonableness of a punitive damages award: (1) "the degree of reprehensibility" of the defendant's action, (2) "the disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award," and (3) the difference between a punitive damages remedy and the civil or criminal penalties that could be imposed in similar cases. 517 U.S. 559, 575, 583 (1996). With respect to reprehensibility, the Court held that "evidence that a defendant has repeatedly engaged in prohibited conduct," even against nonparties, provides support for a higher punitive damage award. *Id.* at 576-77. However, in *State Farm Mutual Automobile Insurance, Co. v. Campbell*, the Court found that while repeated harmful conduct to nonparties is "more reprehensible than an individual instance of malfeasance, in the context of civil actions courts must ensure the conduct in question replicates the prior transgressions." 538 U.S. 408, 423 (2003) (citations omitted). Indeed, "a defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id.* at 422.

Then, in *Philip Morris USA v. Williams*, the Court firmly held that "the Constitution's Due Process Clause forbids [the] use of a punitive damages award to

punish a defendant for injury that it inflicts upon nonparties…." 549 U.S. 346, 355 (2007). However, the Court also affirmed that "evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible." *Id*. The Court warned that the risk that a jury might misunderstand the distinction between accounting for nonparty harm in the reprehensibility analysis but not in the final damages award "is a significant one – because, for instance, of the sort of evidence that was introduced at trial or the kinds of argument the plaintiff [makes] to the jury." *Id*. at 357. Consequently, federal law "obligates [courts] to provide *some* form of protection" against this confusion. *Id*. at 357 (emphasis in original).

    This Court's review of *Philip Morris* and its application to the instant case reveals certain guiding principles. First, the relevance of harm to nonparties is premised upon its importance to demonstrating the "reprehensibility" of a defendant's conduct. In other words, the focus remains on the Defendant's conduct. Second, evidence of harm to nonparties demonstrates reprehensibility not because of the actual harm to nonparties but because it helps "to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public." *Id*. at 355. Third, evidence of harm to nonparties risks leading a jury to speculate about their damages, or, in the instant case, minitrials about the nature and causes of the alleged damages to

3

nonparties. *See id.* at 354 ("How seriously were they injured? Under what circumstances did injury occur?").

In this case, the Court is permitting evidence from Plaintiff's expert regarding the potential harm caused by "sexual boundary limitations." This testimony accomplishes a similar purpose as what is permitted from nonparty damage evidence – the risk of harm to the public of Defendant's conduct. Moreover, Plaintiff, her parents, and other witnesses will be permitted to fully describe Plaintiff's alleged damages. Further, the nonparties will be able to testify about Defendant's similar *conduct* with them. *Doc. 262* at 2. With this evidence being permitted, the Court finds that evidence about the harm to or damages of nonparties should be limited based upon a FRE 403 balancing.

The Court will permit testimony from the individuals listed in *doc. 262* regarding the immediate and medium-term[1] impact of Defendant Howard's conduct on their well-being. Evidence of the alleged impacts of Defendant's conduct on nonparties beyond the medium-term will be excluded given the considerations described above and the increased issues with causation and minitrials associated with such causation. Finally, the Court will exclude any evidence about the alleged harms or damages to nonparties which would be presented by other witnesses or documents. Permitting such extrinsic evidence greatly increases the risk of focusing the jury on nonparties'

---

[1] In the circumstances of this case, the Court considers the medium-term to last a few months.

damages such that they are "asking the wrong question" when it comes to a punitive damage award.

Finally, the Court will include a jury instruction regarding how the jury may consider evidence of Defendant Howard's harm to nonparties, but it will not adopt Plaintiff's proposed jury instruction. As written, Plaintiff's instruction does not inform the jury members that they may account for harm to nonparties in determining the nature of Defendant Howard's wrongful conduct, but they may not include any amount designed to punish Defendant Howard for his acts against nonparties in the final punitive damages award. Instead, the Court will adopt a jury instruction that clarifies this distinction in accordance with the holding in *Philip Morris*. 549 U.S. at 357.

### B. Evidence Regarding Defendant Howard's Assertion of His Fifth Amendment Right

Next, Plaintiff moves the Court to include an adverse inference jury instruction which informs the jury members that they are permitted to assume that Defendant Howard's choice not to publicly admit his sexual misconduct for several years including at his criminal sentencing is adverse to Defendant Howard's position in the civil litigation. *Doc. 305* at 6-10. In particular, Plaintiff argues that Defendant Howard's choice to stay silent immediately after Plaintiff and other female students reported his conduct caused harm to Plaintiff because Defendant Howard "plac[ed] his own

perceived needs above that of his victims" and "withheld information from [Plaintiff] that could facilitate her healing." *Id.* at 6, 9.

Contrary to Plaintiff's argument, an adverse inference jury instruction is used in civil proceedings when a defendant invokes his Fifth Amendment right to remain silent *during* a civil trial or hearing before a finder of fact, not when a defendant has previously chosen to invoke his Fifth Amendment privilege during a criminal proceeding or at another point in the civil litigation.[2] *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (finding that it was not error for a prison tribunal to hold an inmate's invocation of his Fifth Amendment privilege during a non-criminal disciplinary hearing against him because "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify"). At trial, Plaintiff may present evidence and argue that Defendant Howard's unwillingness to admit to his misconduct harmed Plaintiff in various ways. However, an adverse inverse jury instruction is not necessary unless Defendant Howard invokes his Fifth Amendment privilege during his

---

[2] Plaintiff cites to *Mid-America's Process Serv. v. Ellison*, in which the court held that the civil defendants were permitted to invoke their Fifth Amendment privilege during discovery, but they "may have to accept certain bad consequences that flow from that action." 767 F.2d 684, 686 (10th Cir. 1985). Although this case involves the potential adverse consequences of invoking the Fifth Amendment privilege outside of a trial or hearing, the court was not deciding whether an adverse jury instruction was necessary. Instead, the court was deciding whether, given the circumstances of the case, the defendants were entitled to a stay of discovery in the civil litigation pending the resolution of their related criminal proceedings. *Id.*

testimony at trial. Should he invoke this privilege, Plaintiff may move the Court to include an adverse inference jury instruction at that time.

### C. Evidence Related to Mitigation of Punitive Damages

Finally, Plaintiff moves the Court to prohibit Defendant Howard from arguing that the jury should reduce any punitive damages award because Defendant Howard already served a criminal sentence or because he has done good deeds after the events that gave rise to this lawsuit, including serving as a deacon at his church. *Doc. 305* at 10-13.

With respect to Defendant Howard's criminal sentence, Plaintiff argues that rather than supporting a lower punitive damages award, "the possibility of a jail sentence justifies upholding a substantial punitive damages award" under the third guidepost for determining punitive damages in *Gore*. *Id.* at 11. The third guidepost in *Gore* instructs courts to examine the difference between a punitive damages remedy and the civil or criminal penalties that could be imposed in a comparable case. 517 U.S. at 583. This guidepost is intended to help courts anchor a punitive damage award based on the amount that legislators have already deemed to be an appropriate punishment for similar conduct. *Id.* It does not relate to whether a punitive damages award may be reduced based on a criminal (or civil) punishment that a civil defendant has already served. Plaintiff provides no authority for the assertion that a civil defendant cannot argue for reduced punitive damages based on a previous criminal punishment.

7

Similarly, Plaintiff has not provided any controlling legal authority for the proposition that a civil defendant may not present evidence of good acts after the commission of the unlawful activity in order to mitigate an award of punitive damages. As a result, the Court will permit Defendant Howard to present evidence and argue to the jury that his criminal sentence and evidence of good acts after the events that gave rise to this lawsuit should mitigate any punitive damages award.

IT IS THEREFORE ORDERED that the parties may present evidence and arguments related to punitive damages consistent with the rulings provided in this Order.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**